IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00154-RMR-CYC

DEVYN TOWNSEND,

    Plaintiff,

v.

JEFF LONG, an individual and Warden of Sterling Correctional Facility,
GWENDOLYN LONDENBERG, an individual and Captain at Fremont Correctional Facility,
CHRIS BARR, an individual and Investigator with the Office of the Inspector General, and
MAUREEN SHERIDAN, an individual and Investigator with the Office of the Inspector General,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Cyrus Y. Chung, United States Magistrate Judge.**

Defendants Jeff Long, Gwendolyn Londenberg, Chris Barr, and Maureen Sheridan move to dismiss plaintiff Devyn Townsend's Eighth Amendment claims against them pursuant to Fed. R. Civ. P. 12(b)(1) and (6), asserting untimeliness, sovereign immunity, qualified immunity, and failure to state a claim. ECF Nos. 80 and 90. Because the Court lacks jurisdiction over the official-capacity claims, the individual-capacity claims against Barr and Londenberg are barred by the statute of limitations, and Sheridan and Long are entitled to qualified immunity, the Court recommends that the motions be granted.

## BACKGROUND

According to the amended complaint, whose factual allegations the Court accepts as true for this motion, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), twice during the plaintiff's

incarceration at the Fremont Correctional Facility ("FCF") he was sexually assaulted by other inmates. The first occurred on May 10, 2020 and, after another inmate reported the assault, the plaintiff met with Londenberg, a captain at FCF, for a mental health check on May 11, 2020. ECF No. 57 ¶¶ 13–20. The plaintiff told Londenberg that he was assaulted by a Blood gang-member inmate, that he believed the Blood gang would label him a "snitch" and retaliate against him for reporting the assault, and that he feared for his life. *Id*. ¶ 21. Barr, an Investigator with the Office of the Inspector General, then interviewed the plaintiff. *Id*. ¶ 22. The plaintiff reiterated to Barr that he had been sexually assaulted and said that he did not want to report the assault for fear of retaliation. *Id*. Barr took no further action with regard to the assault. *Id*. ¶ 23. Neither Londenberg nor Barr took any steps to protect the plaintiff such as transferring him to another facility or placing him in protective custody. *Id*. ¶ 25. Subsequently, the plaintiff received repeated threats from his assailant, sparking fears of retaliation. *Id*. ¶ 26.

The second sexual assault occurred at FCF on February 6, 2022. *Id*. ¶ 27. Again, the plaintiff's assailant was a Blood gang member, though a different one than the first. *Id*. ¶¶ 27–28. The plaintiff reported this sexual assault to FCF's medical team and later told Sheridan, an Investigator with the Office of the Inspector General, that he was assaulted, that he was in fear for his life, and that the second assault was related to the May 2020 assault. *Id*. ¶¶ 39, 41. After interviewing several witnesses, Sheridan ultimately concluded that the plaintiff's accusations were unfounded. *Id*. ¶ 42–46.

Later that month, the plaintiff was transferred to Sterling Correctional Facility ("SCF"). *Id*. ¶ 47. The plaintiff was subject to non-sexual assaults at SCF and had his property stolen because he was labeled a "snitch." *Id*. ¶ 48. As a result of the assaults and related threats, the plaintiff asked to be transferred. *Id*. ¶ 49. Instead of transferring him immediately or placing him

2

in protective custody, Long, SCF's Warden, gave the plaintiff a choice between general population or restrictive housing. *Id*. at 50. The plaintiff chose the latter option and was placed in restrictive housing for over a month before being transferred to a different facility. *Id*. ¶¶ 51–52.

The plaintiff suffered psychological and emotional distress following the assaults, attempting suicide twice. *Id*. ¶ 53–54. He is no longer incarcerated but continues to experience mental health issues. *Id*. ¶ 55.

As a result, the plaintiff brings Eighth Amendment claims pursuant to 42 U.S.C. § 1983 against each of the defendants and seeks money damages. *Id*. ¶¶ 56–84. These two motions followed, seeking dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

## ANALYSIS

### I.     Eleventh Amendment Immunity

The plaintiff brings his claims against the defendants in their individual and official capacities. Long, Barr, and Sheridan argue that the plaintiff's official-capacity claims for money damages against them are barred by the Eleventh Amendment. ECF No. 80 at 5. Londenberg does not make this argument in her motion, *see* ECF No. 90, but because it is often treated as a jurisdictional issue, the Court may consider it sua sponte. *Jud. Watch, Inc. v. Griswold*, 554 F. Supp. 3d 1091, 1100 n.6 (D. Colo. 2021); *see generally United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 941 (10th Cir. 2008) (noting that "Eleventh Amendment immunity doctrine is not easy to characterize").

It is settled law that official-capacity claims under section 1983 for damages against Colorado state employees are barred by the Eleventh Amendment. *See Cleveland v. Martin*, 590 F. App'x 726, 730 (10th Cir. 2014); *Hunt v. Colo. Dep't of Corr.*, 271 F. App'x 778, 780–81 (10th Cir. 2008). The plaintiff concedes as much as to Long, Barr, and Sheridan, ECF No. 89 at

3

3, and there is no reason to think that Londenberg is any different. As a result, to the extent the plaintiff seeks money damages for official-capacity claims against all defendants, those claims should be dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction. *Amin v. Voigtsberger*, 560 F. App'x 780, 783 (10th Cir. 2014).

## II. Statute of Limitations as to Individual-Capacity Claims Against Barr and Londenberg

Barr and Londenberg argue that the individual-capacity claims brought against them are barred by the statute of limitations. ECF No. 80 at 6–7; ECF No. 90 at 5–6. Although the statute of limitations is an affirmative defense, the issue may be resolved on a motion to dismiss where the application of the limitations period is apparent on the face of the complaint. *See Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008). A court will grant such a motion when the undisputed relevant dates make a challenged claim untimely. *Gardner v. Schumacher*, No. 23-2150, 2024 WL 5199962, at *2 (10th Cir. Dec. 23, 2024)

This case was initiated on January 17, 2023. ECF No. 1. The original complaint included a failure to protect claim against Londenberg. *Id*. at 19–20. The original complaint did not identify Barr by name and does not clearly bring a claim relating to the May 10, 2020 assault, though it does reference April 2020 PREA reports as well as PREA interviews and reports surrounding incidents at FCF. ECF No. 1 at 14, 20, and 23. The Amended Complaint, filed on December 11, 2024, first names Barr and alleges that the plaintiff was assaulted on May 10, 2020. *See* ECF No. 57 ¶¶ 3, 13–26.

Actions brought pursuant to 42 U.S.C. § 1983 are subject to the general personal injury limitation period of the state in which the action arose. *Hunt v. Bennett*, 17 F.3d 1263, 1265 (10th Cir. 1994). In Colorado, the limitation on a claim brought pursuant to section 1983 is two years. Colo. Rev. Stat. § 13-80-102(g). Federal law determines when a section 1983 cause of action

4

accrues. *Herrera v. City of Espanola*, 32 F.4th 980, 990 (10th Cir. 2022). Determining an accrual date must "begin[ ] with identifying 'the specific constitutional right' alleged to have been infringed." *Id*. at 990 n.5 (quoting *McDonough v. Smith*, 588 U.S. 109, 115 (2019)). Accrual occurs "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* at 990; *see Smith v. City of Enid By & Through Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1998) (section 1983 "claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated" (quotation marks omitted)).

The plaintiff's Eighth Amendment claim against Barr alleges that he was subject to cruel and unusual punishment because when Barr "investigated the [May 10, 2020] sexual assault [he] was aware that [the plaintiff] was at substantial risk of serious harm," ECF No. 57 ¶ 65; *see also id*. ¶¶ 22-26, and subsequently "failed to take reasonable action to protect [the plaintiff] from substantial risk of serious harm." *Id*. ¶ 67. Therefore, the claim against Barr accrued in mid-2020 when Barr investigated the May 10, 2020 assault and did not take any steps to protect the plaintiff. *See Brown v. GEO Grp., Inc.*, No. 20-cv-01995-DDD-SKC, 2022 WL 20054108, at *3 (D. Colo. Mar. 1, 2022) (Eighth Amendment claim based on sexual assault by other inmate accrued when the assault occurred), *recommendation adopted*, 2022 WL 20054109 (Aug. 10, 2022) ("Brown II"); *Pierce v. Cannon*, No. 24-CV-4033-JAR-ADM, 2024 WL 4803837, at *5 (D. Kan. Nov. 15, 2024) (plaintiff's claim against prison official accrued when the official's investigation into the sexual assault by cellmate was concluded).

Similarly, the allegations against Londenberg relate to her investigation of the May 10, 2020 sexual assault. ECF No. 57 ¶¶ 19–26, 58–62. According to the plaintiff, she "investigated the first sexual assault and was aware that [the plaintiff] was at substantial risk of serious harm" and "failed to take reasonable action to protect" the plaintiff. *Id*. ¶¶ 60-61. As with Barr, then, the

5

claim against Londenberg accrued in mid-2020. *Pierce*, 2024 WL 4803837, at *5. Two years from that date expires well before the complaint's filing in January 2023.

The plaintiff protests, arguing that his claim accrued not at the close of the investigation, but when he suffered further assault in February 2022. ECF No. 89 at 4; ECF No. 98 at 3–4. But "the limitations period can be triggered before a plaintiff has full knowledge of an injury, its cause, or all the evidence to support a claim." *Brown II*, 2022 WL 20054109, at *1. Thus, the plaintiff's knowledge of all potential injury that may result from the alleged constitutional violation does not trigger accrual. Instead, the plaintiff's knowledge that his constitutional rights have been violated starts the limitations clock. *Smith*, 149 F.3d at 1154.

Because the complaint was filed after the two-year statute of limitations ran, the burden shifts to the plaintiff "to identify a theory that allows [him] to overcome the statute[ ] of limitations and thereby render [his] claims timely." *Herrera*, 32 F.4th at 992. Here, he tries to carry that burden by invoking equitable tolling. ECF No. 89 at 4–7; ECF No. 98 at 4. But the plaintiff's argument rests on events post-dating his original complaint. That cannot toll time prior to that complaint's filing in January 2023. The claim is therefore still time-barred because the two-year limitations period ran in mid-2022.

Because the individual-capacity claims against Barr and Londenberg are barred by the statute of limitations, the Court respectfully recommends that they be dismissed without prejudice. *Vigil v. Laurence*, 524 F. Supp. 3d 1120, 1127–28 (D. Colo. 2021).

### III.     Sufficiency of Eighth Amendment Claims Against Sheridan and Long

Sheridan and Long attack the Eighth Amendment claims against them. That amendment prohibits "cruel and unusual punishment." U.S. Const., amend. VIII. It therefore imposes a duty on prison officials to provide humane conditions of confinement, including "reasonable measures

to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks omitted). This obligation includes a duty "to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (quotation marks omitted).

"To prevail on a failure to protect claim, an inmate must show (1) that the conditions of his incarceration present[ed] an objective substantial risk of serious harm and (2) prison officials had subjective knowledge of the risk of harm." *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018) (quotation marks omitted). To satisfy the second prong, the inmate must show that the prison official was deliberately indifferent to the inmate's health or safety. *Farmer*, 511 U.S. at 834. This deliberate indifference is akin to recklessness as used in the criminal law. *See id.* at 839; *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006). The subjective component of the deliberate indifference test requires that, before liability can be imposed, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Even so, "prison officials who 'actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Howard v. Waide*, 534 F.3d 1227, 1239 (10th Cir. 2008) (quoting *Farmer*, 511 U.S. at 844–45).

Long and Sheridan contend that the Amended Complaint lacks sufficient facts to plead an Eighth Amendment claim. ECF No. 80 at 11–13. The relevant standard for evaluating that contention is oft-repeated and well-known. A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp.*

7

*v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). Legal conclusions are not entitled to the assumption of truth, *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. The ultimate duty of the Court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

  A.  **Sheridan**

  The plaintiff alleges that Sheridan investigated the February 6, 2022 sexual assault that occurred at FCF. ECF 57 ¶ 40. He told Sheridan that he was in fear for his life and that the February 2022 assault related to the May 2020 assault. *Id*. ¶ 41. Sheridan interviewed a variety of witnesses, including the plaintiff's cellmate, the perpetrator of the assault, and a former Blood gang member. *Id*. ¶¶ 42–45. According to the plaintiff, Sheridan's interview of the former Blood gang member focused on that individual's sexuality and whether he had been in a physical relationship with the plaintiff. *Id*. ¶ 44. The former Blood gang member also told Sheridan that if the perpetrator of the assault threatened to force sex on the plaintiff, it would happen. *Id*. ¶ 45. Sheridan concluded that the plaintiff's accusations were unfounded. *Id*. ¶ 46. Later that month, the plaintiff was transferred to SCF. *Id*. ¶ 47. The plaintiff was then subject to non-sexual

assaults and had his property stolen while at SCF because he had been labeled a "snitch." *Id*. ¶ 48. According to the plaintiff, Sheridan "failed to take reasonable action to protect [the plaintiff] from the substantial risk of serious harm," *id*. ¶ 74, and, as a result, he suffered assaults, thefts, pain, and anguish. *Id*. ¶ 75.

The plaintiff's Eighth Amendment claim against Sheridan fails on the subjective component of the deliberate indifference test. The allegations make clear that Sheridan did investigate the February 2022 assault but concluded that the plaintiff's allegations of sexual assault were unfounded. *Id.* ¶¶ 40, 46. The subjective component of the deliberate indifference test requires that, before liability can be imposed, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Farmer*, 511 U.S. at 837. "[I]f a prison official has knowledge of a substantial risk of serious harm to inmates, [s]he is not deliberately indifferent to that risk unless [s]he is aware of and fails to take reasonable steps to alleviate that risk." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). While inaction can be enough in certain circumstances, *Keith v. Koerner*, 843 F.3d 833, 848 (10th Cir. 2016), the plaintiff alleges that this defendant conducted an investigation that involved interviewing several people and concluded that the plaintiff's allegations were unfounded. ECF 57 ¶¶ 40, 46. There are no allegations that this conclusion was a farce, covering up Sheridan's true belief. Without such a claim, the Amended Complaint fails to allege that Sheridan was "aware of" a "substantial risk of serious harm" to the plaintiff that she then ignored. *See Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that [s]he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment."). Instead, she concluded that what he said was not true. And, while the plaintiff alleges that he told her that the

February 2022 assault was related to the May 2020 assault, the Amended Complaint concedes that the investigation into the May 2020 assault was "closed noting that [the plaintiff] had refuted his previous statements." *Id.* ¶¶ 24, 41. These facts, taken together, do not allege that Sheridan was deliberately indifferent to a risk of which she was aware. In short, nothing is alleged that shows that Sheridan had a sufficiently culpable state of mind. *See Scott v. Montoya*, No. 17-cv-01364-KLM, 2019 WL 688053, at *5 (D. Colo. Feb. 15, 2019); *see also Farmer*, 511 U.S. at 844 (explaining that "prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment" and teaching that prison officials who "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent" can be found free from liability); *Tafoya*, 516 F.3d at 916 ("An official's failure to alleviate a significant risk of which he was unaware, no matter how obvious the risk or how gross his negligence in failing to perceive it, is not an infliction of punishment and therefore not a constitutional violation.").

Moreover, the allegations make clear that the plaintiff "was transferred to [SCF] later in the month after [Sheridan's] investigation closed." ECF No. 57 ¶ 47. There is no allegation that Sheridan had authority at SCF and all of the harm the plaintiff alleges he suffered after Sheridan's involvement occurred after he was transferred to SCF. Sheridan is alleged to have concluded that the plaintiff's allegations were unfounded and closed her investigation without taking any other action. The plaintiff was then transferred, and there is no allegation that Sheridan had involvement in the transfer or had specific knowledge of risks to the plaintiff or an ability to abate them at SCF. Given the facts and context, by closing her investigation and taking no further steps, Sheridan "responded reasonably to the risk, even if the harm ultimately was not averted," *Farmer*, 511 U.S. at 844, given that the plaintiff was no longer at FCF.

10

The plaintiff protests, arguing that Sheridan "disregarded a substantial risk of serious harm" to him. ECF No. 89. This ignores his own factual allegations. The allegations against Sheridan are that she investigated the second assault and concluded that the plaintiff's allegations were unfounded. ECF No. 57 ¶¶ 40–46. The plaintiff disagrees with Sheridan's conclusion, but his allegations do not show that she was aware of any potential harm to him that she ignored. The Amended Complaint alleges that Sheridan's first involvement came when she investigated the sexual assaults the plaintiff alleged. *Id*. The same month the investigation was closed, the plaintiff was transferred to SCF. *Id*. ¶ 47. And while the plaintiff alleges that at SCF he was labeled a "snitch" and suffered assaults as a result, he does not allege that Sheridan had any control or influence at SCF or any knowledge of the threats he faced there.

*Howard v. Waide* counsels no different result. There, the inmate asked to be transferred to different housing as a result of being targeted for sexual assault by a prison gang. 534 F.3d at 1230–34. Despite indications in the record that they had an ability to grant the inmate's request, prison officials did not do so. *Id*. at 1241. Instead, they told the inmate he would have to "learn to live with risks to his safety" and implied that the inmate could not complain about his facility placement, comments that could allow a jury to "reasonably conclude that they declined to respond in an objectively reasonable manner." *Id*. (quotation marks omitted). Sheridan is differently situated. She is not alleged to have had any ability to intervene to stop the assaults the plaintiff suffered at SCF. And while the plaintiff argues that his transfer to SCF itself evinces Sheridan's disregard of a substantial risk of serious harm because there were Blood gang members there, the Amended Complaint is devoid of evidence of Sheridan's knowledge of that fact or her involvement in the transfer. As a result, even if she had knowledge of a substantial

11

risk of serious harm to the plaintiff, the allegations do not support a finding that she "declined to respond in an objectively reasonable manner." *Id*.

Because the plaintiff fails to plead facts to allege the subjective component of an Eighth Amendment violation against Sheridan, the claim should be dismissed and the Court need not engage in an analysis of the objective component. *Herker v. Neyhart*, No. 20-cv-03530-SKC, 2021 WL 3883638, at *4 (D. Colo. Aug. 31, 2021).

**B.     Long**

The plaintiff alleges that in February 2022 he was transferred to SCF, where Long was the Warden. ECF No. 57 ¶¶ 2, 47. After the transfer, the plaintiff was subject to non-sexual assaults at SCF and had his property stolen because he was labeled a "snitch." *Id*. ¶ 48. As a result of the assaults and threats of assaults, the plaintiff asked to be transferred. *Id*. ¶ 49. Instead of transferring him immediately or placing him in protective custody, Long told the plaintiff that he would either have to be part of the general population or be placed in restrictive housing. *Id*. at 50. The plaintiff chose restrictive housing and was placed into restrictive housing for more than a month before he was transferred to a different facility. *Id*. ¶¶ 51–52.

Such factual allegations demonstrate not deliberate indifference to a substantial risk of serious harm, but a reasonable response "to the threat in order to ensure Plaintiff's reasonable safety." *Gallegos v. Daughenbach*, No. 20-cv-01337-WJM-KLM, 2021 WL 11586246, at *8 (D. Colo. June 1, 2021), *recommendation adopted*, 2021 WL 11586247 (D. Colo. June 28, 2021). There is no allegation that Long was aware of the two sexual assaults at FCF or that the plaintiff was facing any kind of assault at SCF until the plaintiff alleges in paragraph 50 of the Amended Complaint that he requested a transfer from SCF because of non-sexual assaults and threatened assaults. ECF No. 57 ¶¶ 48–50. In response to that request, Long told the plaintiff that he could

12

either stay in the general population or move into restrictive housing and the plaintiff chose the latter. *Id*. ¶¶ 50–51. Not only do these allegations not establish that Long was deliberately indifferent to the plaintiff's concerns, *Pittman v. Kahn*, No. 23-1153, 2024 WL 507476, at *3 (10th Cir. Feb. 9, 2024) (unpublished), they affirmatively show that Long showed "some concern for the [plaintiff's] safety." *Carter v. Padilla*, 54 F. App'x 292, 294 (10th Cir. 2002) (no deliberate indifference where, following an assault by a fellow inmate, plaintiff was placed in administrative segregation at his own request); *see also Howard*, 534 F.3d at 1239–40 ("[A]n official responds to a known risk in an objectively unreasonable manner if he knew of ways to reduce the harm but knowingly [or] recklessly declined to act."); *Goodson v. Vieyra*, No. 14-3001-SAC, 2014 WL 5528692, at *3 (D. Kan. Nov. 3, 2014) ("Plaintiff's allegation that he was and is being held in administrative segregation indicates he is provided protection from other inmates."). As a result, the plaintiff fails sufficiently to plead the subjective component of an Eighth Amendment violation against Long. Accordingly, this claim against this defendant should be dismissed, and the Court need not engage in an analysis of the objective component. *Herker*, 2021 WL 3883638, at *4.

### C. Qualified Immunity

The defendants add a layer to their motion to dismiss, asserting that qualified immunity applies here. ECF No. 80 at 13–14. Under that doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome the defense, "the onus is on the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the

challenged conduct." *Surat v. Klamser*, 52 F.4th 1261, 1270–71 (10th Cir. 2022) (quotation marks omitted). To pass scrutiny under the first prong on a Rule 12(b)(6) motion "the plaintiff 'must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights.'" *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins*, 519 F.3d at 1249). Courts may address the prongs in any order, *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010), and a failure "to establish either prong of the two-pronged qualified-immunity standard" means "the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016) (citations omitted).

Here, as described above, the plaintiff failed to plead a constitutional violation against either Sheridan or Long. That failure entitles these defendants to qualified immunity. *Montoya v. Vigil*, 898 F.3d 1056, 1064 (10th Cir. 2018) ("[I]f the plaintiff failed to state a claim under Rule 12(b)(6), the government would also be entitled to qualified immunity."). As a result, the Court need not consider whether the rights were clearly established at the time of the challenged conduct. *Holmes*, 830 F.3d at 1134–35.

Because the defendants are entitled to qualified immunity, the Court recommends that dismissal of the claims against Sheridan and Long be with prejudice. *Vreeland v. Olson*, No. 20-cv-02330-PAB-SKC, 2021 WL 4237269, at *5 n.7 (D. Colo. Sept. 16, 2021); *see Lamle v. Eads*, 134 F.4th 562, 567 (10th Cir. 2025) (affirming "dismissal with prejudice because" defendant was "entitled to qualified immunity on the claim for damages").

## CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Motion to Dismiss First Amended Complaint (ECF No. 57) Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) filed by defendants Long, Barr, and Sheridan, ECF No. 80, be **GRANTED** and that Defendant

Londenberg's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 57), ECF No. 90, be **GRANTED** as follows:[1]

The plaintiff's official-capacity claims against all four defendants should be **DISMISSED without prejudice** pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction;

The plaintiff's individual-capacity claims against defendants Barr and Londenberg should be **DISMISSED without prejudice** because they are barred by the statute of limitations; and

The plaintiff's individual-capacity claims against defendants Sheridan and Barr should be **DISMISSED with prejudice** because those defendants are entitled to qualified immunity.

Respectfully submitted this 3rd day of July, 2025, at Denver, Colorado.

BY THE COURT:

_____
Cyrus Y. Chung
United States Magistrate Judge

---

[1] Be advised that all parties shall have fourteen days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Finally, all parties must consult and comply with the District Judge's practice standards for any specific requirements concerning the filing and briefing of objections.